IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

**HENSEL PHELPS CONSTRUCTION CO.,** a Delaware corporation;

Plaintiff,

v.

**BOND SAFEGUARD INSURANCE COMPANY**, an Illinois corporation.

Defendant.

___

### COMPLAINT AND JURY DEMAND
___

Plaintiff, Hensel Phelps Construction Co. (hereinafter "Hensel Phelps), through counsel Spies, Powers & Robinson, P.C., submits this Complaint and Jury Demand as follows:

### I. PARTIES

1. Plaintiff, Hensel Phelps, is a construction company, incorporated in Delaware and with its principal place of business in Greeley, Colorado.

2. Defendant, Bond Safeguard Insurance Company, is a surety company, incorporated in Illinois, with its principal place of business in Mount Juliet, Tennessee.

### II. JURISDICTION AND VENUE

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 based on the diversity of citizenship between the parties and because Plaintiff's claims entail an amount in controversy in excess of $75,000.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2). A substantial part of the events giving rise to the claim took place in this judicial district and the real property that is

Case 1:14-cv-02495-KLM   Document 1   Filed 09/09/14   USDC Colorado   Page 2 of 8

a subject of the action is situated in this judicial district.

## III. GENERAL ALLEGATIONS

5.  Plaintiff incorporates all allegations set forth above as if more fully set forth herein.

6.  Hensel Phelps entered into a contract with the City and County of Denver to act as the general contractor for the construction of the Denver Justice Center - Courthouse (hereinafter referred to as the "Project") located at 520 West Colfax, Denver, Colorado.

7.  Hensel Phelps entered into a written subcontract with Trainor Glass Company to complete all glass and glazing systems for the Project as required by the Project's plans and specifications (hereinafter referred to as the "Subcontract").

8.  Pursuant to Article 14 of the Subcontract, Trainor Glass warranted and guaranteed that its work and materials on the Project would be free of any defects and deficiencies and agreed to make good, at its own expense, any defect in the material provided by or the workmanship performed by Trainor Glass on the Project.

9.  Pursuant to Article 19 of the Subcontract, Trainor Glass agreed that if it did not comply with the terms of the Subcontract or correct any defect in the material provided by or the workmanship performed by Trainor Glass on the Project within three days after written demand by Hensel Phelps, Hensel Phelps had the right to terminate the Subcontract and correct any defect in the material provided by or the workmanship performed by Trainor Glass on the Project at the expense of Trainor Glass.

10.  Pursuant to Article 19 of the Subcontract, Trainor Glass agreed that if Hensel Phelps incurred any expenses to correct any defect in the material provided by or the workmanship performed by Trainor Glass on the Project, such expenses chargeable to Trainor Glass will include,

2

without limitation, all direct costs incurred in correcting Trainor Glass's defective or deficient work, the cost of supervision, administration, job overhead, travel, attorneys fees, legal and accounting fees and expenses, and Hensel Phelps' overhead plus 10% of the costs of the corrective work, together with interest at the rate of 10% per annum until totally paid.

11. Pursuant to Article 34 of the Subcontract, Trainor Glass agreed to provide Hensel Phelps a performance bond, drawn in favor of Hensel Phelps, and executed by an approved surety company.

12. Pursuant to Article 34 of the Subcontract, Trainor Glass provided Hensel Phelps a performance bond, Bond No. 5033957, and executed by Bond Safeguard Insurance Company in favor of Hensel Phelps (hereinafter referred to as the "Performance Bond").

13. The Performance Bond provides that if Trainor Glass is in default under the Subcontract and Hensel Phelps declares a default and terminates the Subcontract, Bond Safeguard is required to remedy the default by, *inter alia*, correcting any work under the Subcontract at its own expense, or paying the expenses incurred by Hensel Phelps to correct any work under the Subcontract within twenty days of receipt of any invoices for the expenses incurred.

14. The Performance Bond provides that if Bond Safeguard fails to remedy Trainor Glass's default by correcting the defective work or paying Hensel Phelps for correcting the defective work, Bond Safeguard shall pay Hensel Phelps all attorneys fees and costs incurred by Hensel Phelps in enforcing Bond Safeguard's obligations under the Performance Bond.

15. Trainor Glass substantially completed its work under the Subcontract on or before June 1, 2010, and the full Subcontract price was paid to Trainor Glass by Hensel Phelps.

16. After Trainor Glass completed its work, Hensel Phelps discovered water leaks related

to the work performed by Trainor Glass under the Subcontract.

17. Hensel Phelps notified Trainor Glass of the water leaks and demanded that Trainor Glass promptly correct their defective work that was the cause of the water intrusion.

18. After Trainor Glass failed to respond to Hensel Phelps' demand to correct its defective work or make any attempt to correct its defective work under the Subcontract, Hensel Phelps notified Trainor Glass and Bond Safeguard that Trainor Glass was in Default of the Subcontract and notified Trainor Glass and Bond Safeguard that if the defective work was not promptly corrected Hensel Phelps would terminate the Subcontract under Article 19 of the Subcontract and arrange to have the defective work corrected and that the expenses incurred for such corrective work would be the responsibility of Trainor Glass.

19. After Trainor Glass and Bond Safeguard failed to respond to the Notice of Default, Hensel Phelps notified Trainor Glass and Bond Safeguard that the Subcontract was terminated under Article 19 of the Subcontract.

20. Hensel Phelps notified Bond Safeguard of Hensel Phelps' claim under the Performance Bond for Trainor Glass's default under the Subcontract, Hensel Phelps' termination of the Subcontract, and demanded that Bond Safeguard remedy Trainor Glass's default under the Subcontract pursuant to the terms of the Performance Bond.

21. Counsel for Bond Safeguard, Robert Bowes, Esq., acknowledged receipt of the Subcontract, Hensel Phelps' Notice of Default and Demand for Correction to Trainor Glass, Hensel Phelps' Notice of Termination to Trainor Glass, and Hensel Phelp's demand that Bond Safeguard remedy Trainor Glass's default under the Subcontract pursuant to the terms of the Performance Bond.

22. Bond Safeguard failed to respond to Hensel Phelps' demand for performance under the Performance Bond and failed to remedy Trainor Glass's default under the Subcontract.

23. Hensel Phelps investigated the cause of the water intrusion issues and developed a scope of repair to correct Trainor Glass's defective work under the Subcontract.

24. Hensel Phelps sent the results of the water intrusion investigation and the proposed scope of repair to Bond Safeguard and requested that Bond Safeguard promptly correct Trainor Glass's defective work under the Subcontract.

25. After Bond Safeguard failed to perform under the Performance Bond and correct Trainor Glass's defective work, Hensel Phelps completed the corrective repairs at its expense.

26. The owner of the Project, the City and County of Denver, accepted the corrective repairs performed by, or on behalf of, Hensel Phelps.

27. Hensel Phelps sent Bond Safeguard three invoices for the corrective repairs in the total amount of $582,343.16 and requested that Bond Safeguard pay the invoices as required by the terms of the Performance Bond.

28. Bond Safeguard has refused to pay any portion of the expenses incurred by Hensel Phelps to correct the work performed by Trainor Glass under the Subcontract.

## IV.  FIRST CLAIM FOR RELIEF
### Breach of Contract

29. Plaintiff incorporates all allegations set forth above as if more fully set forth herein.

30. Trainor Glass and Bond Safeguard entered into a valid, binding and enforceable surety contract to guarantee the full and proper performance of the Subcontract between Trainor Glass and Hensel Phelps.

31. Hensel Phelps was an express, intended third-party beneficiary of the surety contract

to guarantee Trainor Glass's performance under the Subcontract.

32. Bond Safeguard breached the surety contract by its failure to remedy Trainor Glass's default under the Subcontract by paying amounts due Hensel Phelps for correcting the performance of Trainor Glass's work under the Subcontract.

33. Hensel Phelps fully performed all obligations it owed under the Subcontract and the surety contract.

34. As a proximate result of Bond Safeguard's breach of contract, Hensel Phelps has suffered, and continues to suffer, damages including all costs to correct the performance of Trainor Glass's work under the Subcontract, together with all pre- and post-judgment interest, costs and attorneys fees.

## V.  SECOND CLAIM FOR RELIEF
### Unreasonable Delay and Denial of Payment of Covered Benefits
### Pursuant to C.R.S. §§ 10-3-1115 and 10-3-1116

35. Plaintiff incorporates all allegations set forth above as if more fully set forth herein.

36. Hensel Phelps is a direct beneficiary of the surety contract between Bond Safeguard and Trainor Glass and was directly entitled to the benefits of that surety contract.

37. Hensel Phelps made a claim to Bond Safeguard for benefits under the surety contract.

38. Bond Safeguard failed to pay Hensel Phelps on its claim for benefits under the surety contract without a reasonable basis for its actions, and continues to refuse to pay covered benefits without a reasonable basis for its actions.

39. Because Bond Safeguard has unreasonably denied Hensel Phelps claim for payment of benefits under the surety contract, and continues to refuse to pay covered benefits without a reasonable basis, Bond Safeguard is liable to Hensel Phelps for remedies pursuant to C.R.S. § 10-3-

1116.

## VI.  THIRD CLAIM FOR RELIEF
### Bad Faith Breach of Contract

40. Plaintiff incorporates all allegations set forth above as if more fully set forth herein.

41. Bond Safeguard owed Hensel Phelps a duty to act reasonably and in good faith in its performance of the terms of the surety contract, including the prompt payment of benefits owed to Hensel Phelps under the surety contract.

42. Bond Safeguard acted unreasonably by its failure to pay Hensel Phelps on its claim for benefits under the surety contract without providing a reasonable basis for its actions.

43. Bond Safeguard knew that its failure to pay Hensel Phelps on its claim for benefits under the surety contract was unreasonable, or recklessly disregarded the fact that its conduct was unreasonable.

44. Bond Safeguard's bad faith breach of contract has caused Hensel Phelps to suffer and continue to suffer damages.

## JURY DEMAND

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE**

WHEREFORE, Plaintiff, Hensel Phelps Construction Company, respectfully requests that this Court enter judgment in its favor and against Defendant, Bond Safeguard Insurance Company, and award Plaintiff all relief allowed by law, including but not limited to the following:

1. Plaintiff's compensatory and consequential damages;

2. Two times the amount of all covered benefits owed under the surety contract pursuant to C.R.S. § 10-3-1116;

3. Attorneys fees pursuant to C.R.S. § 10-3-1116;

4. Pre- and post-judgment interest at the highest lawful rate; and

5. For such other and further relief as allowed by law.

Respectfully submitted on September 9, 2014,

                **SPIES, POWERS & ROBINSON, P.C.**
                *s/ Jack D. Robinson*
                _____
                Jack D. Robinson, #22367
                1660 Lincoln Street, Suite 2220
                Denver, Colorado  80264
                Telephone: (303) 830-7090
                Facsimile:  (303) 830-7089
                **Attorneys for Plaintiff Hensel Phelps Construction Company**

Plaintiff's address:
c/o Spies, Powers & Robinson, P.C.
1660 Lincoln Street, Suite 2220
Denver, CO  80264